(59 P.3d 355)

No. 88,503

# In the Interest of M. K.

Opinion filed December 13, 2002.

*Dan E. Turner* and *Phillip L. Turner*, of Topeka, for the appellants, D.R. and S.R.

*Thomas D. Arnhold*, of Hutchinson, for the appellees, B.D. and J.D.

*Sarah J. Sargent*, of Kansas Children's Service League, of Topeka, *amicus curiae*.

Before KNUDSON, P.J., LEWIS, J., and BUCHELE, S.J.

LEWIS, J.: This is an appeal from an adoption action in which a young child, M.K., has been placed in the middle of a maelstrom of legal rhetoric and a bitter fight for the right to adopt her. For the purposes of this opinion, we shall refer to M.K.'s relatives as "the D's." We shall refer to the appellants as "the R's." In addition, we note there was an *amicus curiae* brief filed in this case by the Kansas Children's Service League (KCSL).

The D's are relatives of M.K. and are the appellees in this case. The trial court granted their motion to adopt M.K. and ordered that she be removed from the R's home and be placed with the D's. The R's did not receive notice of the motions filed by the D's or of the date of any of the hearings on those motions. The R's then filed a motion for reconsideration, arguing the trial court did not have jurisdiction to consent to the adoption because the D's did not have standing to seek relief from the KCSL's placement decision. At the hearing, the R's argued, among other things, that they had not been notified or provided with an opportunity to be heard concerning the D's motion.

The facts before the trial court and the procedure used in reaching this stage of the litigation are somewhat conflicting, confusing, and, at times, mystifying. We deem it necessary to set those facts out at some length in order that our opinion be understood.

This all began as a parental rights termination action. After the parental rights of M.K.'s natural parents were terminated, M.K. was placed in the care and custody of SRS for adoption, and SRS was authorized to give consent for the legal adoption of M.K. The trial court recommended strong consideration be given to granting kinship adoption of M.K. Ultimately, the staffing committee rejected the D's as adoptive parents and then selected the R's as the adoptive family.

The D's then filed a motion before the trial court seeking interested party status and asking to adopt M.K. and for increased visitation rights.

In October 2001, the trial court held a hearing to address the motion filed by the D's. As a result of that hearing, the trial court denied the motion filed by the D's. It found it did not have "good

cause to set aside the decision" made by the KCSL. The court also denied the D's request to be named as an interested party.

The D's then filed a motion for reconsideration with the trial court. They served their motion on the State, the guardian ad litem, and SRS. There was no service attempted on the R's.

Apparently simultaneously with the court's consideration of the D's motion, M.K. was placed permanently with the R's on December 7, 2001. The R's entered into a written contract with SRS to adopt M.K.

While the contract with the R's was being written, the hearing on the motion filed by the D's continued. The trial court ultimately granted that motion and issued an opinion rescinding its prior order and ordering custody of M.K. to be transferred to the D's. The trial court also gave consent to the D's to adopt M.K. We note again that the R's were given no notice whatsoever that these proceedings were taking place.

The R's then filed two motions, one seeking interested party status and the other asking the court to reconsider its decision giving the D's the right to adopt M.K.

The trial court granted the R's motion to be named as an interested party in the proceedings. However, the trial court only allowed arguments by counsel and refused the R's attempts to call witnesses even though they argued they had not been given notice or an opportunity to appear at the previous hearing. All of these matters were appealed to this court.

It is difficult for us to discern at what stage these adoption proceedings now rest and where they are going. We have a case in which M.K. has essentially been adopted by two different families and one of those adoptions has been reversed by the trial court. It is our intention to stop the merry-go-round and to place this child in a permanent home so that she can get on with a normal life.

The R's contend the trial court abused its discretion when it ruled on the D's motion without having first found that the R's were interested parties to the proceedings. We agree.

The record does not show that any objection was made concerning the R's interested party status at the trial court level. Ordinarily, issues not raised before the trial court cannot be raised

on appeal. *Dalmasso v. Dalmasso*, 269 Kan. 752, 765, 9 P.3d 551 (2000). There is an exception to this rule. We may consider an issue if necessary to serve the ends of justice or prevent the denial of fundamental rights. See *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622-23, 938 P.2d 1293 (1997). The R's were not given notice or an opportunity to be heard when the trial court addressed the D's earlier motion. This is a classic denial of due process. The interests of justice and the prevention of the denial of fundamental rights require this court to consider whether the trial court erred in granting the D's motion for reconsideration without first determining that the R's were interested parties.

The R's were granted interested party status. However, on the crucial motion of the D's to reconsider, the R's were not given notice, and there was no request that the R's be named as an interested party in the action. In the trial court's order consenting to an adoption of M.K. by the D's, the issue was not raised, and no such status was found by the trial court.

When the D's petitioned the trial court to reconsider the order concerning the adoption of M.K. by them, the R's were neither mentioned nor named as interested parties.

K.S.A. 2001 Supp. 38-1502(e) defines an interested party, for the purposes of participation in proceedings under the Kansas Code for Care of Children, as "the state, the petitioner, the child, any parent, any grandparent and any person found to be an interested party pursuant to K.S.A. 38-1541 and amendments thereto."

Certainly the R's fit the definition set forth above, and due process and justice require that they be made a party to the adoption proceedings under the facts shown. We hold that an adoption proceeding which does not include all the interested parties as parties to the action is not valid and will be reversed on appeal.

It appears to be appropriate and timely to consider at this time the issue on the D's cross-appeal. The D's contend in their cross-appeal that the trial court erred in granting the R's interested party status in the proceedings brought by the D's.

Our standard of review is abuse of discretion, and we see no abuse of discretion by the trial court.

K.S.A. 38-1541 stipulates only an individual "with whom the child has been residing or who is within a fourth degree of relationship to the child" can petition the court to participate in the proceeding as an interested party. In this case, M.K. was placed permanently with the R's on December 7, 2001. The R's were parties with whom the child had been residing.

We hold the trial court did not abuse its discretion by naming the R's as interested parties to the proceedings brought by the D's.

The R's contend the trial court also abused its discretion when it heard the D's motion for reconsideration without providing notice to the R's.

Administrative Order No. 155 instructs trial courts to use the order of permanency hearing form when ruling on child in need of care permanency hearings. Included on the second page of the four-page form is an instruction for the trial court to determine that "[a]ll required notices have been given. All interested parties and any foster parents, pre-adoptive parents, and relatives providing care have been properly notified." K.S.A. 2001 Supp. 38-1502(y) stipulates that prior to a permanency hearing, notice must be given to "interested parties, foster parents, pre-adoptive parents or relatives providing care for the child." K.S.A. 38-1562 requires the court to provide notice of the time and place of the hearing to the "foster parents, preadoptive parents, and relatives providing care" for pretermination dispositional hearings. The same parties must be notified by the court for parental termination proceedings under K.S.A. 38-1582(b)(1). As we construe these statutes, for pretermination hearings, termination proceedings, and post-termination permanency hearings, the R's were statutorily entitled to notice as preadoptive parents.

The record indicates that SRS filed a request for a permanency hearing before the trial court addressed the D's additional motion. No documentation is included in the record indicating if or when a permanency hearing was held and, if not held, why the permanency hearing was not scheduled. The R's, as preadoptive parents, would have been entitled to notice and an opportunity to be heard at a dispositional hearing where the court, in essence, addressed the progress made toward permanent placement of M.K.

The trial court erred in conducting its hearing without seeing that the R's were notified, and we reverse that order for this reason as well as other reasons set forth in this opinion.

In *Spielman v. Hildebrand*, 873 F.2d 1377 (10th Cir. 1989), the court, at page 1385, stated: " 'The fundamental right of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' " (Quoting *Matthews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 [1976].)

It is obvious that was not given to the R's and their due process rights were violated.

The R's argue the trial court could only regain custody of M.K. if it made a finding that the agency had not made a reasonable effort toward finding a permanent placement for M.K.

K.S.A. 38-1584(d) provides in part:

*"If the court determines that reasonable efforts or progress have not been made* toward finding an adoptive placement or establishing an acceptable permanent guardianship or placement with a fit and willing relative, the court may rescind its prior orders and make other orders regarding custody and adoption that are appropriate under the circumstances." (Emphasis added.)

It appears to us the trial court can only rescind its order through the procedure provided for in K.S.A. 38-1584(d). In this case, the trial court never made a finding that SRS had failed to make reasonable efforts or progress towards finding a permanent home for M.K. The result of that failure is that the court was not justified in rescinding its prior order placing custody of M.K. with SRS.

We hold that under K.S.A. 38-1584(d), the trial court may not rescind its orders towards finding adoptive parents or establishing permanent guardianship or placement with a fitting and willing relative without first making a finding that SRS, which has been given custody of the child and the right to consent to the adoption of that child, has not made reasonable efforts or progress towards finding an acceptable permanent placement for the child. Such an order is invalid and will be reversed. We reverse on the trial court's failure to consider whether the D's were interested parties, failure to ensure the R's were provided with notice of hearing held to address the D's motion for reconsideration; and error in determining that M.K. should be removed from SRS custody without first

deciding whether SRS had failed to make reasonable efforts or progress in finding permanent placement for M.K.

In considering the emotional results of our decision, we believe the only fair way to resolve this is to remand the matter for a new trial in which all notices required by this opinion are given. We further order the new trial shall be conducted by a different trial judge.

Reversed and remanded with directions.